**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ARGONAUT INSURANCE COMPANY**

                                        **Plaintiff,**

        **v.**                                                    **1:19-CV-1247**
                                                                  **(TJM/CFH)**

**CITY OF TROY, NEW YORK,**

                                        **Defendant.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**

### DECISION & ORDER

        Before the Court is Plaintiff Argonaut Insurance Company's motion to dismiss

Defendant City of Troy, New York's counterclaims.  See dkt. # 12.  The parties have

briefed the issues and the Court has determined to decide the matter without oral

argument.

## I.    BACKGROUND

        This case concerns insurance coverage that Plaintiff Argonaut Insurance Company

("Argonaut") provided Defendant City of Troy, New York ("Troy" or "the City").  The

coverage dispute arose out of an action against the City filed by Victoria Leigh Brothers in

the Supreme Court of Rensselaer County, New York in 2017.  Complaint ("Complt."), dkt.

# 1, at ¶ 7.  Brothers sued the City after she fell and injured herself at a vacant property

the City owned and maintained.  Id.  Argonaut provided Troy with insurance coverage at

the relevant time.  Id. at ¶ 8.  The policy Argonaut provided was a "Retained Limit Policy."

1

Id. Under that policy, the City agreed to a $500,000 Retained Limit of "self-insured retention." Id. at ¶ 9.  Included in that Retained Limit was "'any loss adjustment expenses [including defense costs] incurred by the insured." Id. (internal quotation omitted).

Acting within its policy rights, the City hired the law firm of Pattison, Sampson, Ginsberg, & Griffin (the "Ginsberg firm") to defend against Brothers' claim.  Id. at ¶ 10. Argonaut took control of the defense in November 2018, retaining the law firm of Bailey, Johnson & Peck, P.C. (the "Bailey firm").  Id. at ¶ 11.  At that time, Plaintiff and Defendant agreed that all invoices from the Bailey firm would be paid by Argonaut.  Id.  Argonaut does not seek to recover any fees and costs paid to that law firm in this action.  Id.

The case Brothers brought resolved after appeals and mediation.  Id. at ¶¶ 12-14. The parties in that matter agreed to settle the case for an amount in excess of the Retained Limit of $500,000 contained in the policy.  Id.  That settlement therefore required that Argonaut contribute to the settlement.  Id.  A dispute had arisen, however, between Argonaut and the City about how much of that $500,000 Retained Limit the City had expended on defense costs.  Id. at ¶ 15.  Defendant alleges that the City had incurred around $100,000 in defense costs paid to the Bailey firm, the firm that the Plaintiff hired. Id. at ¶ 16.  Plaintiff alleges that Defendant had not incurred any such costs.  Id.

The parties then began another dispute about $83,000 that Defendant had paid the Ginsberg firm, the law firm that the City hired.  Id. at ¶ 17.  That firm did not provide any invoices or billing entries to explain this bill.  Id.  Instead, the firm submitted a "Billing Journal" that indicated the firm had worked 543 hours on the matter.  Id. at ¶ 18.  The records, Plaintiff alleges, did not include any actual billing entries or descriptions of tasks. Id.  The undeveloped nature of the records, Plaintiff claims, "is problematic because"

2

Plaintiff cannot "determine," among other problems, "(1) how much of the billed time was expended on coverage/insurance issues; and (2) how that many hours were spent defending the City–given the relatively limited amount of work product that was completed." Id. at ¶ 19.  The parties settled the dispute on an interim basis by agreeing that the settlement for Brothers' lawsuit would be paid by a $317,000 contribution from the Defendant and $983,000 from the Plaintiff.  Id. at ¶ 20.

Plaintiff filed the instant action on October 9, 2019 to address this dispute about Defendant's alleged obligation to fund defense costs.  The Complaint contains two counts. Count One alleges breach of contract due to Defendant's failure to pay the $100,000 paid to the Bailey firm as part of the $500,000 Retainer Limit.  Plaintiff seeks recovery of that amount.  Count Two also alleges breach of contract, in this case because Plaintiff alleges that Defendant has not properly accounted for the fees Defendant was obligated to pay the Ginsberg firm as part of the Retainer Limit.  Plaintiff alleges that failing to file itemized billing records constitutes a breach of contract and demands that Defendant pay some portion of the $83,000 the Ginsberg firm charged.

Defendant's answer to the Complaint contains six counterclaims.  See dkt. # 8. The first counterclaim alleges that Defendant is entitled to recover attorneys fees and expenses incurred in defending the instant action if Defendant prevails on Plaintiff's claims.  As to the second counterclaim, Defendant alleges that when Argonaut took over the defense of Brothers' lawsuit, "Defendant was led to believe that" Plaintiff "would deny coverage unless the City agreed to" representation from the Bailey firm.  Id. at ¶ 51. Defendant alleges, however, that the Bailey firm had a conflict in representing the City.  Id. at ¶ 52.  That conflict, Defendant alleges, grew out of the Bailey firm's representation of

Rensselaer County and Michael Sikirica in an action commenced in this court, Thomas v. Mason, Fountain, Colaneri, and Sikirica, No. 17cv626.  In that case, Defendant claims, the City–through its police officers Mason, Fountain, and Colaneri–had a competing interest with Rensselaer County.  Id. at ¶ 53.  Another conflict arose, Defendant claims, when the Bailey firm represented Rensselaer County and Sikiricka in another lawsuit that involved City Police Officers as co-defendants.  Id. at ¶¶ 54.  Despite these conflicts, Defendant claims, Argonaut insisted on using the Bailey firm in the Brothers act, and did not obtain a waiver.  Id. at ¶ 56.  Moreover, Defendant contends, Argonaut acted in bad faith by "interjecting false and erroneous claims regarding the Ginsberg Firm's ability to represent the City."  Id. at ¶ 57.  As an example of such conduct, Defendant alleges that Argonaut falsely claimed that the Ginsberg attorney of record in the Brothers action had passed, making a change in firms necessary.  Id. at ¶ 58.  The attorney who died had never been the attorney of record.  Id.  In addition, the Bailey firm made "erroneous representations" about its conflicts with the City, and the Plaintiff relied on those representations in bad faith.  Id.  This conflict, Plaintiff claims, constitutes a breach of the implied covenant of good faith and fair dealing.  Id. at ¶ 60.  As to the third counterclaim, Defendant alleges that Plaintiff's attempts to transfer the Bailey firms expenses to the Retained Limit represent a breach of contract.  The fourth counterclaim alleges that Plaintiff breached the contract by transferring defense of the Brothers claim to the Bailey firm, which had a conflict of interest with the City.  The fifth counterclaim alleges a breach of the duty of loyalty for the same conduct.  The sixth counterclaim alleges bad faith.

## II.    Legal Standard

Plaintiff has filled a motion to dismiss Defendant's counterclaims pursuant to

4

Federal Rule of Civil Procedure 12(b)(6).  In addressing such motions, the Court must.

accept "all factual allegations in the complaint as true, and draw[] all reasonable

inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).

This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009).  "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face."  Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

When, as here, the Plaintiff proceeds pro se, the Court "'construe [the complaint] broadly,

and interpret [it] to raise the strongest arguments that [it] suggests.'"  Weixel v. Bd. of Educ.

of N.Y., 287 F.3d 138, 146 (2d Cir. 2002) (quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d

Cir. 2000)).  "This is especially true when dealing with pro se complaints alleging civil

rights violations."  Id.

**III.   ANALYSIS**

 Plaintiff seeks dismissal of each of the City's counterclaims.[1]  The Court will

------------------------

 [1]Argonaut includes a "Statement of Facts" in its motion.  As Argonaut brings the motion pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court will consider the counterclaim and "'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'"  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).  The Court may also consider "'matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'"  Id. at 253 (quoting Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)). To consider other types of documents, such as affidavits, declarations, or other documents supplied by the Plaintiff, would require the Court to convert the motion to one for summary judgment.  Id. at 152. The Court declines to do so.  The Court will of course consider the contract for insurance in deciding this motion, since that Contract both attached as an exhibit to the Complaint and incorporated by reference into that Complaint and the counterclaims.  For the same

address each counterclaim in turn.

### A.    First Counterclaim

Plaintiff argues that the first counterclaim, which purports to seek attorneys fees, fails to state a cause of action at all.  The Defendant has not pled any particular source of law for recovering such fees, and has therefore failed to state a cause of action.  The Defendant does not respond to this argument.

The Court will grant the motion in this respect, since in most instances "attorneys' fees are a form of relief, not a ground for relief." Naples v. Stefanelli, 972 F.Supp.2d 373, 385 n.7 (E.D.N.Y. 2013).  Defendant may of course seek such relief should it become appropriate over the course of the case.

### B.    Second, Fourth, and Fifth Counterclaims

Plaintiff next argues that Defendant's second, fourth, and fifth counterclaims fail to state a claim.  Those claims all allege that the Bailey firm had a conflict of interest in representing Troy in the Brothers litigation.  The Bailey firm, Defendant contends, represented parties with conflicting interests in other litigation involving the City.  The second counterclaim alleges Argonaut engaged in breach of the duty of good faith and fair dealing by hiring the Bailey firm.  The  fourth counterclaim claims a breach of contract in that hiring, and the fifth alleges a breach of the duty of loyalty.  Plaintiff claims that the counts all fail for the same four reasons: (1) the City fails to allege that Argonaut knew of the alleged conflict; (2) the City did not raise the issue with Argonaut; (3) the City fails to allege any damages from this conflict; (4) in any case, a civil cause of action can only

reason, the Court has not considered statements and documents provided by the Defendant in opposing the motion to dismiss.

arise from a conflict when some sort of tortious conduct occurs.  Defendant denies that these claims are premised solely on the idea of "conflict of interest."  Instead, Defendant argues, these claims use the alleged conflict of interest as factual support for claims of breach of Argonaut's duty of good faith and fair duty, breach of duty of loyalty, and breach of contract.

The Court agrees that each of the counterclaims attempts to raise a different contract-related claim due to Argonaut's use of the Bailey firm.  The Court will address each of the claims in turn.

### i.    Breach of Duty of Good Faith and Fair Dealing

Defendant's second counterclaim attempts to raise a claim for breach of the duty of good faith and fair dealing.  In New York, all contracts contain an implied covenant of good faith and fair dealing, meaning that neither party will "act arbitrarily or irrationally" in using discretion conferred by the contract terms.  Dalton v. Educ. Testing Serv., 87 N.Y.2d 384, 389, 663 N.E. 2d 289, 291 (1995).  Under the rule, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  Moran v. Erk, 11 N.Y.3d 452, 456, 901 N.E.2d 187, 190 (2008).  "While the duties of good faith and faith dealing do not imply obligations 'inconsistent with other terms of the contractual relationship,' they do encompass 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included.'" 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (N.Y. 2002) (quoting, in turn, Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 304, 461 N.Y. 2d 232, 448 N.E.2d 86 (N.Y. 1983); Rowe v. Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 69, 412 N.Y.S.2d 877, 385 N.E. 566 (N.Y. 1978) (internal citations omitted)).  At the same

7

time, "the implied covenant of good faith and fair dealing 'is not without limits, and no obligation can be implied that would be inconsistent with the terms of the contractual relationship.'" Scheer v. Elam Sand & Gravel Corp., 177 A.D. 3d 1290, 1291-92 (4th Dept. 2019) (quoting Dalton, 87 N.Y.2d at 389).

The Court, making all inferences in the City's favor as required with this sort of motion, reads this counterclaim to allege that Argonaut hired a firm as defense counsel for the City a firm that Argonaut knew or should have known had a conflict of interest in that representation. While the facts of that hiring, particularly concerning Argonaut's knowledge of the alleged conflict, may not be supported by discovery, the Court cannot conclude based on the facts alleged that Defendant has failed to state a claim in this respect. A reasonable insured would understand that implicit in a contract to provide a legal defense to a lawsuit is a promise that the defense attorney the insurer provides will operate without a conflict of interest. The Court will deny the motion in this respect.

### ii.    Breach of Contract

Defendant's fourth counterclaim alleges that Argonaut's hiring of the Bailey firm, which had a conflict of interest, constituted a breach of contract. In New York, "[t]he essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach." PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc., 16 N.Y.S. 3d 298, 2015 N.Y. App. Div. LEXIS 6711 at *2 (2d Dept. Sept. 16, 2015).

The parties agree that they had a contract, and Defendant asserts that this alleged breach damaged the City by forcing it to accept representation from a firm with a conflict of

interest.  The question here is whether hiring the Bailey firm represented a breach of contract.

The insurance policy in question contains a provision that gives the insurer "the right, but not the obligation, to assume charge of the defense of any 'claim' or 'suit', at our expense."  Insurance Policy, exh. A to Plaintiff's Complaint, dkt. # 1-1, at 41.[2]  Since the contract clearly gives Argonaut the right to take charge of the defense and pay for a law firm of the Plaintiff's choice, the Defendant has not stated a claim in this respect.  The Court will grant the motion and dismiss the fourth counterclaim.

### iii.    Breach of Duty of Loyalty

Defendant's fifth counterclaim alleges a breach of the duty of loyalty from Plaintiff's conduct in hiring a conflicted law firm.  In replying to Plaintiff's motion, Defendant does not point to any case law that indicates that the creation of an insurance contracts creates a duty of loyalty from the insurer to the insured.  New York law recognizes a duty of loyalty that extends from an employee to an employer.  An employee or agent "is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties."  Lamdin v. Broadway Surface Advertising Corp., 272 N.Y. 133, 138 (NY 1936).  An employee has "an affirmative duty at all times to act in his employer's best interests."  Maritime Fish Products, Inc. v. World-Wide Fish Products, 100 A.D.2d 81, 89 (1st Dept. 1984).

Defendant does not explain how an insurance contract creates a duty of loyalty,

---

[2]Because the pagination of the policy is dependent on the section and could confuse readers with access to the exhibit, the Court has paginated references to that policy with reference to the pages provided by the Court's electronic filing system.

and does not point to any New York law that justifies such a claim.  The Court has not

discovered any such law, and notes that the claim is largely redundant of Plaintiff's breach

of duty of good faith and fair dealing claim.  Defendant premises all such claims on the

same set of facts.  For those reasons, the Court concludes that Defendant has failed to

raise a viable counterclaim for breach of duty of loyalty.  The Court will grant the

Defendant's motion in this respect.

### C.     Third Counterclaim

Plaintiff next argues that the Court should dismiss the third counterclaim.   Argonaut

contends that, under the contract language, the insurer had the right to hire and

compensate defense counsel on the Brothers claim.  Argonaut exercised that right and

compensated the attorneys.  Any claim by Defendant that the City is entitled to reduce its

$500,000 by the amount that Argonaut paid defense counsel is contrary to the language of

the contract.  Any breach of contract claim must therefore be dismissed.  No motion is

before the Court, but Plaintiff also contends that the Court should award judgment of

$100,000 to Argonaut on this issue.  Defendant responds that Argonaut has offered a

defense, not an argument for dismissing the claim.  Under the relevant standard,

Defendant argues, the City has pled a breach-of-contract claim by alleging that Argonaut

had an obligation to pay under the contract and refused to do so.

The Court has already explained the legal standard for proving a breach-of-contract

claim in New York.  Defendant's counterclaim alleges that "[p]ursuant to the

Contract/Policy, a[n] express requirement for [Argonaut] transferring the representation of

the City from the Ginsburg Firm to the Bailey Firm was that [Argonaut] became

responsible for incurring and paying the defense costs of the assumed defense."

Counterclaim at ¶ 62.  The City contends that the Plaintiff's failure to credit the cost of defense towards the Retained Limit means that Argonaut shifted the cost of defense from the insurer to the Defendant.  Id. at ¶¶ 63-64.  Such conduct, the City argues, breaches the contractual requirement that Argonaut provide a defense for the Plaintiff.  Id. at ¶ 65.

Defendant's counterclaim satisfies the first and third elements of a breach-of-contract claim.  The parties do not dispute the existence of the insurance contract between the parties.  The City's theory of damages is that Argonaut's refusal to credit the money paid to the Bailey firm towards the Defendant's Retention Limit forces the City to pay more towards damages then the contract requires them to.  The City has thus alleged damages.  The question here is whether Defendant has alleged a breach of contract by pointing to Plaintiff's refusal to deduct the $100,000 paid to the Bailey firm from the Retention Limit.

The policy provides that:

1.    The "retained limit" shall be applied to each "bodily injury," "property damage," "personal and advertising injury," and "employee benefits wrongful act" for which coverage is afforded by this policy.  The "retained limit" will be reduced by any "loss adjustment expenses" incurred by the insured.

Insurance Policy, Exh. A to Complt., dkt. # 1-1, at 60.  The policy defines "loss adjustment expense" as:

all costs and expenses allocated to a specific "claim" or "suit" incurred in the investigation, appraisal, adjustment, settlement, litigation, defense or appeal of a specific "claim" or "suit", including court costs and costs of supersedeas and appeal bonds, and including:
a.    Pre-judgment interest, unless included as part of the award or judgment;
b.    Post-judgment interest; and
c.    Legal expenses and costs incurred in connection with coverage questions and legal actions connected thereto.
"Loss adjustment expense(s)" does not include unallocated loss and adjustment expense.  Unallocated loss and adjustment expense includes, but is not limited to,

11

salaries and expenses of our employees, including staff attorneys, and our office and other overhead expenses."

Id. at 69. "'Retained Limit' refers to the amount stated in the Declarations.  You shall retain this amount as self-insurance as stated in the Declarations.  The 'retained limit' with respect to a self-insured retention shall include 'loss adjustment expenses.'"  Id. at 72.  If a judgment or settlement exceed the retained limit, "all outstanding amounts within the 'retained limit' will be due and payable to" Argonaut "upon demand."  Id. at 60.

The insurance contract also discusses certain "supplementary payments" and the parties' obligations to pay them.  First, the contract obligates the "insured . . . to provide an adequate defense, to investigate any 'claim' or 'suit,' and to accept any offer of settlement within the 'retained limit' that is deemed reasonable to us" related, in relevant part, to a lawsuit against the insured.  Id. at 40-1.  The insured is likewise required to pay all "loss adjustment expense" within the retained limits.  Id. at 41.  That provision also provides the insurer "the right, but not the obligation, to assume charge of the defense of any 'claim' or 'suit', at our expense."  Id.  The contract also includes a "right and duty to defend against any 'claim or suit' seeking, in relevant part, 'loss' for 'bodily injury[.]"'  Id.  "When the duty to defend exists," Argonaut promise to "pay, in addition to the Limit of Insurance, . . .all expenses incurred by us."  Id.

The Court finds that the question here is whether the City "incurred" the $100,000 fees paid to the Bailey firm, and thus is entitled to include that amount in the retained limit.  The policy does not define "incur."  New York law provides that contracts "are construed in accord with the parties' intent."  Greenfield v. Philles Records, 98 N.Y.2d 562, 569 (N.Y. 2002).  "'The best evidence of what parties to a written agreement intend is what they say

in their writing.'" Id. (quoting Slamow v. Del Col, 79 N.Y.2d 1016, 1018 (N.Y. 1992)).  A

court confronted with "a written agreement that is complete, clear, and unambiguous on its

face must be enforced according to the plain meaning of its terms."  Id.  When a contract

"on its face is reasonably susceptible of only one meaning, a court is not free to alter the

contract to reflect its personal notions of fairness and equity."  Id. at 569-70.  "Under New

York law . . . 'incurred means become liable for.'" NexBank, SSB v. Soffer, 102 N.Y.S.3d

566, 567 (1st Dept. 2019) (quoting Rubin v Empire Mut. Ins. Co., 25 NY2d 426, 429 (N.Y.

1969); see also, Metz v. United States Life Ins. Co., 662 F.3d 600, 602 (2d Cir. 2011)

("New York substantive law . . . defines 'incurred' for insurance purposes as 'to become

liable or subject to.'")).

        The Court will grant the motion to dismiss the third counterclaim.  The policy

language discussed above indicates that the Retained Limit shall be reduced by expenses

for defense incurred by the insured.  The facts of the Complaint and counterclaims make

clear that the City never "incurred" any expense for the legal services provided by the

Bailey firm.  Argonaut eventually decided to take over the defense and pay for defense

counsel.  All agree that Argonaut was permitted to take that action under the policy.  The

City never had an obligation to pay that expense, and therefore did not incur such

expense.  The City therefore fails to state a claim on which relief could be granted in this

respect.  As a motion for judgment on Plaintiff's breach-of-contract claim is not before the

Court and Defendant could conceivably offer some other defense, the Court will not grant

Plaintiff's request–which is not made in the form of motion–for a judgment of $100,000 in

relation to this claim.  That issue is still pending.

        **D.    Sixth Counterclaim**

13

Argonaut contends that the sixth counterclaim, which alleges that Plaintiff acted in bad faith in refusing to reduce the Retention Limit by the amount the City paid the Gibson counsel, should also be dismissed.  Even if Defendant proved that Argonaut asked for more detailed billing than had previously been required, Plaintiff contends that such conduct does not amount to bad faith under New York law.  Such conduct, Argonaut insists, is not the sort of egregious conduct required to apply that tort.  The City responds that its bad-faith claim is premised on the fact that Argonaut has alleged in this lawsuit that Defendant failed to provide documentation while knowing that the City had supplied all of the documentation Argonaut requested.  This conduct, Defendant claims, constituted bad faith.  Moreover, Defendant argues, the allegation in the counterclaim that Argonaut's position was "completely without merit in law" is sufficient to withstand a motion to dismiss.

Here, Defendant's bad-faith counterclaim is premised on the idea that Argonaut has unreasonably refused to provide coverage owed in the insurance contract.[3]  In New York, "there is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance policy[.]"  Continental Cas. Co. v. Nationwide Idem. Co., 16 A.D.3d 353, 355 (1st Dep. 2005).  "Allegations that an insurer had no good faith basis for denying coverage are redundant to a cause of action for breach of contract based on the denial of coverage, and do not give rise to an independent tort cause of action, regardless of the insertion of tort language into the pleading."  Royal Indem. Co. v. Salomon Smith

---

[3]Defendant also appears to contend that the bad faith involved filing the breach-of-contract claim in this action, which Defendant claims has no merit.  Such an argument is unpersuasive, as the Defendant did not move to dismiss that claim, but instead brought the instant counterclaim.  In any case the Federal Rules of Civil Procedure provide remedies to a party injured by another party's misuse of process.  Such misconduct does not normally give rise to a separate cause of action.

Barney, Inc., 308 A.D. 349, 350 (1ˢᵗ Dept. 2003).  To the extent that Defendant attempts to

raise a free-standing claim for bad faith in Plaintiff's denial of coverage or interpretation of

Defendant's responsibilities under the Retained Limit portion of the contract, the motion

will be granted.[4]

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's motion to dismiss Defendant's

counterclaims, dkt. # 12,  is GRANTED IN PART and DENIED IN PART.  The motion is

denied with respect to Defendant's second counterclaim for breach of the duty of good

faith and fair dealing.  The motion is granted with respect to all of Defendant's other

counterclaims.

**IT IS SO ORDERED.**

April 20, 2020

Thomas J. McAvoy
Senior, U.S. District Judge

---

[4]In seeking dismissal of this counterclaim, Plaintiff cites to law on whether a plaintiff may obtain punitive damages on a breach-of-contract claim.  See New York Univ. v. Cont'l Ins. Co., 662 N.E.2d 763, 767 (N.Y. 1995) ("damages arising from the breach of a contract will ordinarily be limited to the contract damages necessary to redress the private wrong," and "punitive damages may be recoverable only to vindicate a public right.").  In that situation, a court could award punitive damages only "where it is necessary to deter [an insurer] and other like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible' and of 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" Id. (quoting Rocanova v Equitable Life Assur. Socy., 83 N.Y.2d 603, 614 (N.Y. 1994)).  To the extent that Defendant seeks punitive damages for any claims that remain after the Court disposes of this motion, the Court finds a decision premature and will reserve on that motion until an appropriate point.

15

16